IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| INTERNET PRODUCTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>LLJ ENTERPRISES, INC., *et al.*,<br><br>Defendants. | Civil No. 18-15421 (RBK/AMD)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff/Counterclaim Defendants'[1] Motion to Dismiss (Doc. 21) the Counterclaim (Doc. 16) of Defendants/Counter Plaintiffs LLJ Enterprises, Inc., Linda Janus, Jeffrey Janus, and Lauren Cornelius under Federal Rule of Civil Procedure 12(b)(6). For the reasons detailed herein, this motion is granted in part and denied in part.

**I.  Background**

The parties in this case are in the same industry, and more strikingly, the same family. Plaintiff/Counterclaim Defendant Internet Products, LLC (hereinafter "IPL") is composed of husband and wife duo Rick Janus and Patricia Janus, who are also Counterclaim Defendants in this action.[2] (Complaint ("Compl.") ¶¶9–10.) Defendant/Counterclaim Plaintiff LLJ Enterprises, Inc. (hereinafter "LLJ")[3] is composed of individual Defendants/Counterclaim Plaintiffs Jeffrey

---

[1] Patricia Janus, Rick Janus, and Internet Products, LLC are all Counterclaim Defendants; however, only Internet Products, LLC is a plaintiff in the underlying action.
[2] The Court will hereinafter use "IPL" to collectively refer to all Counterclaim Defendants.
[3] The Court will hereinafter use "LLJ" to collectively refer to all Defendants/Counterclaim Plaintiffs.

Janus, Linda Janus, and Lauren Cornelius. (Compl. ¶24.) Jeffrey, Linda, and Rick Janus are siblings, and Lauren Cornelius is Rick's former stepdaughter. (Compl. ¶¶11–14.)

The dispute in this case stems from the fact that IPL and LLJ are both in the business of selling table pad protectors and piano covers; each company accuses the other of interfering with their performance in the industry. IPL initially filed its Complaint in October 2018, alleging copyright infringement under 17 U.S.C. §§ 106 and 501, trademark infringement, false designation of origin and false descriptions, unfair competition, and cyberpiracy under the Lanham Act, 15 U.S.C. §§ 1114(a) and 1125(a) and (d), and unfair competition under New Jersey common and statutory law. IPL alleged that LLJ unlawfully copied its website design and created extremely similar domain names, thus confusing customers into purchasing from LLJ rather than IPL.

In its Answer,[4] LLJ asserts five separate counterclaims against IPL, Rick Janus, and Patricia Janus: tortious interference with business (Count I), tortious interference with prospective economic advantage (Count II), unfair competition and deceptive trade practices (Count III), defamation (Count IV), and trade libel (Count V). LLJ argues that IPL set up "confusingly similar domain names in order to divert potential customers to their own site," and contacted suppliers "to make false accusations against LLJ in order to scare them away from doing business with LLJ." (Doc. 16 ("Counterclaim") ¶8.) LLJ alleges facts supporting its Counterclaim that are best separated into two categories: "website domain names" and "interactions with wholesalers."

*Website Domain Names*

On April 27, 2017, LLJ "registered the domain name www.tablepadprotectors.com" to "establish a website to sell its products." (Counterclaim ¶10.) LLJ contends that in June 2017, IPL registered two domain names, www.tablepadprotector.com and www.tablepadprotectors.net, that

---

[4] The operative Answer is the Amended Answer, Doc. 16.

were highly similar to LLJ's website in order to lure customers away from LLJ. (*Id.* ¶¶10–14.) In support of this theory, LLJ states that one of these websites redirects automatically to IPL's website, www.tablepadshop.com, and the other website lists the phone number for IPL's business. (*Id.* ¶¶13–14.)

### *Interactions with Wholesalers*

LLJ also claims that IPL contacted three wholesalers to dissuade them from doing business with LLJ. (*Id.* ¶¶16–24). In May 2017, LLJ began communicating with McKay Custom Table Pads, a wholesaler of table pad products, in attempts to "offer McKay's products for resale via LLJ's website." (*Id.* ¶16.) Communications apparently progressed well until June 2017, when a McKay representative relayed that "another vendor had complained to McKay about LLJ's business practices." (*Id.* ¶19.) Later that month, McKay emailed LLJ to say it would not be selling products to LLJ, and warned LLJ "not to use its photographs or artwork in any promotion or advertising materials." (*Id.* ¶20.) Also in June 2017, Berger Table Pads informed LLJ that Internet Products "had contacted Berger via telephone in an unsuccessful attempt to dissuade Berger form doing business with LLJ." (*Id.* ¶21.)

On January 15, 2018, LLJ contacted GRK Manufacturing, a piano cover product wholesaler, in attempts "to establish a wholesale account." (*Id*. ¶22.) GRK repeatedly stated from January through April 2018 that it would send paperwork to LLJ to create the account; however, GRK later informed LLJ that it would not send any paperwork or do business with LLJ, and that it had spoken with someone at IPL "who had accused LLJ of wrongdoing in order to persuade GRK not to do business with LLJ." (*Id*. ¶24.)

On March 5, 2019, IPL filed this present motion to dismiss the Counterclaim. (Doc. 21, IPL's Motion to Dismiss ("IPL Mot.")).

## II. Legal Standard

When deciding a motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the counterclaim. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The Court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the nonmoving party. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). In other words, a [counterclaim] is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The inquiry is not whether [a counterclaimant] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims. *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556

U.S. at 679. A counterclaim cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id*.

### III. Discussion

IPL argues that LLJ's counterclaims must be dismissed because they fail to go beyond conclusory allegations, because they are barred by applicable statutes of limitations, and because LLJ fails to plead facts capable of meeting the elements of several counterclaims. Arguments specific to each counterclaim are addressed below.

#### a. Tortious Interference (Counts I and II)

LLJ's first two counterclaims allege tortious interference with business and tortious interference with prospective economic advantage. IPL seeks dismissal of these counts under Fed. R. Civ. P. 12(b)(6), arguing that LLJ has not alleged facts specific enough to meet the elements of a tortious interference claim. (IPL Mot. at 6.)

To state a claim for tortious interference, a claimant must establish four elements: (1) a reasonable expectation of economic benefit or advantage; (2) the defendant's wrongful, intentional interference with that expectancy; (3) the reasonable probability that the plaintiff would have received the expectancy absent the defendant's interference; and (4) damages resulting from the interference. *Pathfinder, L.L.C. v. Luck*, Civ. No. 04-1475, 2005 WL 1206848 (D.N.J. May 20, 2005) (citing *Varrallo v. Hammond Inc.*, 94 F.3d 842, 848 (3d Cir.1996)).

Here, IPL argues that LLJ has not alleged "any specific facts of interference by the Counterdefendants done intentionally and with malice." (IPL Mot. at 6.) IPL adds that LLJ's counterclaim does not allow any inference into "what statement was made, what actions were taken or that any statement was made with malice." (IPL Mot. at 6.)

Construing the factual allegations in the counterclaim in the light most favorable to LLJ, the Court finds that dismissal is inappropriate. LLJ's Counterclaim alleges with particularity several facts that could meet the elements of a tortious interference claim. For example, LLJ's counterclaim describes IPL's creation of website domain names that differ only slightly from LLJ's domain name, and argues that IPL intended for customers to mistakenly purchase from IPL instead of LLJ. The Counterclaim also alleges that IPL contacted wholesalers to warn them away from doing business with LLJ; it states that LLJ was in the process of developing contracts with at least one of these wholesalers, and alleges facts suggesting that IPL's interference caused this business relationship to fail. (Counterclaim ¶¶16–25.)

These factual allegations are enough to "plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 130. As such, IPL's motion to dismiss is denied as to Counts I and II.

### b. Unfair Competition (Count III)

Count III claims that IPL's "acts constitute unfair competition and unfair business practices in violation of New Jersey common law and N.J. Stat. § 56:4-1 *et seq*." (Counterclaim ¶44).

Under New Jersey's statutory unfair competition law, "No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." NJ.S.A. 56:4-1. "To state a claim for unfair competition under [this] statute, a plaintiff must allege that (1) the mark at issue is valid and legally protectable; (2) the mark is owned by the plaintiff; (3) the defendant used the mark in commerce on or in connection with any goods or services or container for goods; and (4) this 'use' was in a manner likely to create confusion concerning the origin of the goods or services." *Bambi Baby.com Corp. v. Madonna Ventures, Inc.*, Civ. No. 18-12669, 2019 WL 2337447, at *8 (D.N.J. June 3, 2019) (internal quotations omitted).

6

In moving to dismiss, IPL argues that LLJ has "not set forth any false or misleading claims" that could support this count. (IPL Mot. at 7.) It further argues that LLJ "fails to allege any facts that could support an inference that any of the Counterdefendants misappropriated LLJ's property that has some sort of commercial or pecuniary value to LLJ." (Doc. 27, IPL's Reply Brief ("IPL Reply") at 5.) In response, LLJ argues its Counterclaim alleges facts showing that IPL copied LLJ's website domain name and that IPL used the confusingly similar name to draw customers away from LLJ. (Counterclaim ¶44; Doc. 26, LLJ's Memorandum in Opposition ("LLJ Opp.") at 7–8.)

The Counterclaim alleges facts sufficient to survive the motion to dismiss stage. In particular, LLJ alleged facts describing in detail how IPL created websites that were confusingly similar to LLJ's site. Viewing these allegations as true, they are enough to meet the elements of an unfair competition claim, as they detail how the website at issue, www.tablepadprotectors.com, is owned by LLJ; how IPL created www.tablepadprotector.com and www.tablepadprotectors.net in order to create confusion; and how this is likely to actually create confusion. *See, e.g., Pennsylvania Bus. Bank v. Biz Bank Corp.*, 330 F. Supp. 2d 511 (E.D. Pa. 2004) (finding that use of a similar domain name constituted unfair competition in violation of the Lanham Act);[5] *Trade Media Holdings Ltd. v. Huang & Assocs.*, 123 F. Supp. 2d 233 (D.N.J. 2000) (finding unfair competition when the challenged site, www.asiansource.com, differed only slightly from the original site, www.asiansources.com). Accordingly, IPL's motion to dismiss count III is denied.

---

[5] Courts analyze New Jersey unfair competition claims as parallel to those under the Lanham Act, which creates liability for any person who "uses in commerce any word, term, name, symbol or device. . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person." 15 U.S.C.A. § 1125; *see Bambi Baby.com Corp.*, 2019 WL 2337447, at *8 (D.N.J. June 3, 2019) ("The elements of an unfair competition claim under New Jersey law are the same as those under Lanham Act Section 43(a).").

### c. Defamation (Count IV)

LLJ's next counterclaim alleges that IPL made "false and defamatory statements, purporting to be facts, about LLJ's business practices and ethics" in its "telephone conversation and/or other communication with McKay, Berger, and GRK," companies that LLJ sought to do business with. (Counterclaim ¶48.) It further alleges that these statements were "made with actual malice" and constitute "libel per se, as they concerned LLJ's ethics in the business environment." (*Id.* ¶50–51.)

Under New Jersey defamation law, "the plaintiff bears the burden of establishing, in addition to damages, that the defendant '(1) made a defamatory statement of fact (2) concerning the plaintiff (3) which was false, and (4) which was communicated to a person or persons other than the plaintiff.'" *Petersen v. Meggitt*, 969 A.2d 500, 507 (N.J. Super. Ct. App. Div. 2009) (quoting *Feggans v. Billington*, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996)). The plaintiff also bears the burden of proving fault—either negligence or malice—depending on whether the matter is one of private or public concern. *Id.*

IPL makes two arguments for dismissal of Count IV, one based on the statute of limitations and the other based on failure to state a claim.

#### *Statute of Limitations*

IPL argues New Jersey's one-year statute of limitations for defamation claims warrants dismissal for "any alleged defamatory statements made prior to January 31, 2018," because the Counterclaim was not filed until January 31, 2019. (IPL Reply at 1.)

New Jersey law mandates that the statute of limitations for a defamation claim begins to run from the date of publication. *Farzan v. United Parcel Serv., Inc.*, Civ. No. 10-1417, 2011 WL 3510860, at *3 (D.N.J. Aug. 8, 2011). The statute of limitations is an affirmative defense that the

defendants generally must plead and prove. *See Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (statute of limitations on civil rights claim is an affirmative defense). While a plaintiff is not required to plead that the claim has been brought within the statute of limitations, *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir.2002), the Supreme Court observed in *Jones v. Bock*, 549 U.S. 199, 215 (2007), that if the allegations of a complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."

LLJ's counterclaim alleges defamation based in part on statements that occurred on or prior to June 8, 2017, when two wholesalers—McKay Custom Table Pads and Berger Table Pads—informed LLJ that they received negative statements about LLJ. The counterclaim also alleges defamation based on statements made to GRK Manufacturing that seem to have occurred between January 2018 and April 2018.

While it is unclear exactly when the GRK statements occurred, the McKay and Berger statements unquestionably occurred outside of the statute of limitations period. In its opposition, LLJ argues that dismissal is inappropriate because some statements occurred less than one year before filing the Counterclaim. (LLJ Opp. At 12–13.) This argument is unpersuasive.

In *Ahn v. Cigna Health & Life Ins. Co.*, Civ. No. 19-07141, 2019 WL 5304628, at *5 (D.N.J. Oct. 21, 2019), the plaintiff claimed defamation based on 46 separate statements made by the defendant, 22 of which occurred within the one-year statute of limitations period and the rest of which occurred more than one year prior to filing the complaint. The court found that, even though defamation claims based on 22 of the statements were timely, the statute of limitations barred any claims based on the 24 statements that were made more than one year before filing. *See also Demetro v. Nat'l Ass'n of Bunco Investigations*, Civ. No. 14-6521, 2017 WL 3923290, at *10 (D.N.J. Sept. 7, 2017) (dismissing claims of defamation based on statements occurring outside the

applicable one-year statute of limitations, but allowing defamation claims based on statements that were not time-barred to go forward).

A similar situation exists here. For LLJ to state a claim for defamation, the statements forming the basis of the claim would have to have occurred after January 31, 2018. Two of the three statements LLJ relies upon occurred in June 2017, and are thus time-barred. As such, IPL's motion to dismiss Count IV is granted in part, specifically as to defamation claims based on statements made prior to January 31, 2018.

### *Failure to State a Claim*

IPL next argues that any statement made after January 31, 2018 should be dismissed for failure to state a claim because LLJ does not "specify what was said or written by Counterdefendants that was allegedly false and defamatory." (IPL Mot. at 5.)

In a counterclaim or complaint, "a defamation pleading does not need to cite precise defamatory statements, it must only provide sufficient notice to the other party of the allegations made against him." *Benhur v. Madavaram*, Civ. No. 15-6826, 2015 WL 6739109, at *3 (D.N.J. Nov. 2, 2015) Under Fed. R. Civ. P. 8, all that is required is "that the pleadings set forth a short and plain statement of the claim showing that the pleader is entitled to relief." *Cristelli v. Filomena II, Inc.*, Civ. No. 99-2862, 1999 WL 1081290, at *2 (D.N.J. Dec. 1, 1999).

LLJ's counterclaim identifies IPL as the speaker and GRK Manufacturing as the recipient of the allegedly defamatory statements. (Counterclaim ¶¶19–24.) It also provides approximate dates. (*Id.*) Although LLJ does not exactly quote any defamatory statement, it has met the requirement of providing "sufficient notice" to IPL of the allegations against it. As such, IPL's motion to dismiss Count IV of the counterclaim is denied in part, specifically as to the portions of Count IV based on statements made after January 31, 2018.

### d. Trade Libel (Count V)

Finally, Count V of LLJ's counterclaim alleges trade libel, arguing that IPL "published to third parties false statements about LLJ" with "actual malice," and without "reasonable grounds to believe their statements were true." (Counterclaim ¶¶54–56.)

Trade libel "encompasses defamation especially directed to the plaintiff's trade or business." *Demetro v. Nat'l Ass'n of Bunco Investigations*, Civ. No. 14-6521, 2017 WL 3923290, at *11 (D.N.J. Sept. 7, 2017). "To make out a trade libel claim, a plaintiff must establish (1) publication; (2) with malice; (3) of false allegations concerning its property, product or business; and (4) special damages, i.e., pecuniary harm." *Id*. Trade libels differs from typical defamation in that "trade libel only goes to comments regarding an actual product or service of a company," whereas "statements that attack the personal character of its owner as vendor are in actuality defamation." *Read v. Profeta*, Civ. No. 15-02637, 2019 WL 2307285, at *39 (D.N.J. May 29, 2019).

In moving to dismiss, IPL argues that the counterclaim "fails to sufficiently plead what false allegations concerning LLJ's property, product, or business that LLJ alleges" IPL made, and does not properly allege malice or pecuniary harm. (IPL Reply at 3; IPL Mot. at 6.)

As a preliminary matter, LLJ has clearly pled facts supporting element (3), that IPL made false allegations concerning LLJ's business, rather than concerning personal character: the Counterclaim alleges that IPL told wholesalers that LLJ, as a business, committed wrongdoing. (Counterclaim ¶¶16–24.) The remaining elements of trade libel are addressed separately below.

*Publication*

In a claim for trade libel, a plaintiff "must prove publication of a matter derogatory to the plaintiff's property or business, of a kind designed to prevent others from dealing with him or

otherwise to interfere with plaintiff's relations with others." *Patel v. Soriano*, 369 N.J. Super. 192, 246–47, 848 A.2d 803, 834 (App. Div. 2004). This "communication must be made to a third person and must play a material part in inducing others not to deal with plaintiff." *Id*.

LLJ's counterclaim alleges that IPL relayed false statements about LLJ's business to other vendors. (Counterclaim ¶24.) As these other vendors are third parties, the facts detailing these alleged communications are sufficient at this stage to show publication.

### *Malice*

"To allege malice in a trade libel or commercial disparagement claim, the claimant must allege facts to suggest that the accused knew the statements were false or that they were published with reckless disregard for their falsity." *Intervet, Inc. v. Mileutis, Ltd.*, Civ. No. 15-1371, 2016 WL 740267, at *7 (D.N.J. Feb. 24, 2016). Here, LLJ has sufficiently alleged malice, as the Counterclaim alleges facts suggesting that IPL made false statements to GRK solely to deter it from doing business with LLJ, regardless of truth or falsity. (Counterclaim ¶¶8, 16–24.)

### *Special Damages*

Showing of special damages is a requirement in all trade libel cases, and "because this cause of action is designed to protect the economic interests of a vendor, the plaintiff must plead and prove special damages with particularity." *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 378 (D.N.J. 2004). To prove special damages, a plaintiff must "allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication." *Id*.

Despite IPL's contention that LLJ does not properly allege pecuniary harm, the Court finds that LLJ has alleged facts plausibly showing special damages. LLJ stated that IPL attempted to "persuade GRK not to do business with LLJ," resulting in GRK actually "declining to do any

business with LLJ" despite earlier conversations between LLJ and GRK indicating that the companies had agreed to establish a wholesale account. (Counterclaim ¶¶22–24.) Thus, LLJ's counterclaim has alleged a specific loss as a "direct result" of IPL's "purportedly libelous statements." *Bocobo v. Radiology Consultants of S. Jersey, P.A.*, 477 F. App'x 890, 901 (3d Cir. 2012).

Because Count V of LLJ's Counterclaim sufficiently pleads the elements of trade libel, IPL's motion to dismiss this count is denied.

**IV.     Conclusion**

For the reasons contained herein, IPL's motion to dismiss LLJ's Counterclaim is granted in part, solely as to defamation claims in Count IV arising from statements made before January 31, 2018, as these are barred by the statute of limitations. The remainder of IPL's motion to dismiss is denied.


Dated: 11/4/2019                                                         /s/ Robert B. Kugler
                                                                         ROBERT B. KUGLER
                                                                         United States District Judge